UNITED STATES of America,

v.

Randall ZANDSTRA, Defendant.

No. 00 CR 0209 RWS.

United States District Court,
S.D. New York.

April 30, 2001.

*SENTENCING OPINION*

SWEET, District Judge.

On October 20, 2000, a jury convicted defendant Randall Zandstra ("Zandstra") of mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371, 1341, and 1342. For the reasons set forth below, and subject to the sentencing hearing currently scheduled for 9:30 a.m. on May 1, 2001, Zandstra shall be sentenced to thirty months of incarceration, to be followed by a three-year term of supervised release. The mandatory $200 assessment is due immediately pursuant to 18 U.S.C. § 3013.

### The Defendant

Zandstra, who is thirty-eight years old, grew up as the eldest of four children born to hardworking, religious parents. Zandstra completed high school and received credits at a variety of colleges in Michigan and Oklahoma. In addition, Zandstra worked for his father at a nursery before leaving home when he was twenty-five.

Zandstra married Linda Rosfeld in 1984, but divorced in 1988. He has not had any contact with her since 1994, when a judge in the Dallas County (Texas) Criminal Court sentenced him to four years of probation for aggravated assault and twelve years of imprisonment for attempted murder after threatening her with a revolver and shooting her boyfriend. The attempted murder conviction was reversed on appeal in 1996 for failure to instruct the jury on the lesser included charge of aggravated assault, and retrial is pending.

Zandstra married Diane Heintz in 1997, with whom he reportedly has a turbulent relationship. Although his wife resides in Las Vegas, Nevada, Zandstra has recently been living at various locations in New Jersey, New York, Michigan, Oklahoma, and Texas.

A frequent gambler, Zandstra visits Atlantic City on a regular basis with others, and reportedly "counts cards" for the group's "investor," in the hopes of receiving a portion of the yield. He was sentenced to 90 days of imprisonment and a fine for misdemeanor theft after using al-

tered tokens to obtain payouts from slot machines at a Minnesota casino in 1995.

Building on his experience working with his father, Zandstra and a partner started a landscaping business in Las Vegas in 1990. He left the company in 1995 in order to move to New Jersey, where he obtained employment as a production manager at a landscaping company. He remained in that position until 1997, when began a series of landscaping and construction jobs at various New Jersey companies.

### The Offense

In 1999, Zandstra joined High Market Vending Associates ("High Market"), in New York City. In newspapers from Georgia to California, High Market advertised the sale of vending machines and supporting services. However, the company never had any vending machines to sell, and existed solely to defraud potential investors. In response to the ads, numerous individuals called High Market's toll-free telephone number and spoke to individuals claiming to be "locators," who pitched the vending machines and mailed promotional materials to potential buyers via Federal Express. The materials offered three vending machine "packages": the "Silver" packages, including four machines at $11,465, with a projected annual "income stream" of $51,500; the "Gold" package, including six machines plus two bonus machines, at the cost of $16,195, with a projected annual "income stream" of $72,042; and the "Platinum" package, which included thirteen machines plus two bonus machines, at the cost of $22,175, with a projected "income stream" of $120,286. In addition, for a fee of $200 per machine, each package offered to have an experienced "locator" meet with the investors and assist them in finding profitable locations to place the vending machines.

Approximately twenty-nine individuals mailed a collective total of $276,510.50 to High Market for the purchase of vending machines that never materialized. As a result of the mail fraud conspiracy, the Probation Office reports, families that were seeking a financial foothold have suffered—both in their bank accounts and in their relationships, as a result of the strain of discovering the scam. One victim filed for bankruptcy, another had to seek a second job, and one of the victims' children will not receive braces.

### The Guidelines

The Presentence Report (PSR) prepared by the United States Probation Office groups the conspiracy and substantive mail fraud counts together pursuant to § 3D1.2(d) of the United States Sentencing Guidelines (the "Guidelines"). The base offense level for fraud is 6. U.S.S.G. § 2F1.1(a). Because the loss exceeded $200,000, eight levels are added pursuant to § 2F1.1(b)(1). Two additional points are added because the offense involved a scheme to defraud more than one victim. U.S.S.G. § 2F1.1(b)(2)(B). The adjusted offense level is therefore 16.

Zandstra's 1992 Texas aggravated assault conviction for threatening his ex-wife with a revolver merits one criminal history point pursuant to Guidelines §§ 4A1.1(c) and 4A1.2(e)(2). Two additional criminal history points are added for the Minnesota theft offense. U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2). As Zandstra was on probation in Texas when he committed the instant offense, two more points are added pursuant to § 4A1.1(d). With a total of five criminal history points, Zandstra's Criminal History Category is III.

The Guidelines' range for an offender with an offense level of 16 and a Criminal History Category of III is 27–33 months.

In addition, the Guidelines impose a fine range of from $5,000 to $50,000 for this offense. U.S.S.G. § 5E1.2(c)(3).

**4**

However, the fine will be waived due to Zandstra's inability to pay, although, as set forth below, he will be required to make full restitution to his victims. *See* U.S.S.G. § 5E1.2(a).

### The Sentence

Zandstra shall be sentenced to a term of thirty months of imprisonment, to be followed by a three-year term of supervised release. *See* 18 U.S.C. §§ 3583(b)(2), 3624(e); U.S.S.G. §§ 5D1.1(a), 5D1.1(a)(2). A $200 mandatory special assessment shall be due immediately. 18 U.S.C. § 3013.

■ In addition, Zandstra is required to pay full restitution to his victims, jointly and severally with his coconspirators. The restitution shall equal the total amount of the loss to the victims, $276,510.50. *See* 18 U.S.C. §§ 3663(A), 3664; U.S.S.G. § 5E1.1(a)(1). If Zandstra engages in a Bureau of Prisons ("BOP") non-UNICOR work program, he shall pay $25 per quarter toward restitution. However, if Zandstra participates in the BOP's UNICOR program as a grade 1 through 4, he shall pay 50% of his monthly UNICOR earnings toward restitution, consistent with BOP regulations. *See* 28 C.F.R. § 545.11. Any payment that is not payment in full shall be divided proportionately among the victims.

Zandstra shall be required to follow the standard mandatory conditions of supervised release, including that he shall not (1) commit another federal, state, or local crime; (2) illegally possess a controlled substance; (3) possess a firearm or destructive device.

In addition, the following special conditions shall apply. Zandstra shall provide the probation officer with access to any requested financial information. He shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule. Zandstra shall not participate in any gambling activity while any portion of the restitution remains unpaid.

 As Zandstra poses a low risk of future substance abuse, the mandatory drug testing requirement is waived.

Zandstra is to report to the nearest Probation Office within 72 hours of release from custody. Supervision shall be in the district of residence.

It is so ordered.